Case No. 6:23-cv-00002

In the United States District Court for the
Southern District of Texas, Victoria Division

---

In re Arthur Jacob Brass, *Debtor*

Arthur Jacob Brass, *Appellant*

v.

Vitol, Inc., *Appellee*

---

On Appeal from the United States Bankruptcy Court for the Southern District of
Texas, Victoria Division

Adversary Proceeding No. 21-06006

---

APPELLANT RESPONSE AND REPLY BRIEF OF ARTHUR JACOB BRASS

---

Shannon & Lee LLP
R. J. Shannon
S.D. Tex. Bar No. 3196214
Tex. Bar No. 24108062
2100 Travis Street, Suite 1525
Houston, TX 77002
Tel.: (713) 714-5770
Fax: (833) 71405770
Email: rshannon@shannonleellp.com

*Counsel for Arthur Jacob Brass*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................. 4

SUMMARY OF ARGUMENT ......................................................................................... 6

ARGUMENT ................................................................................................................... 11

I.    Reply to Vitol's arguments regarding the allegations pleaded and presented to the
Bankruptcy Court for decision. ...................................................................................... 11

  a.    Vitol's allegation that Brass obtained money "from Vitol" is a judicial admission that
  defeats the basis of the Bankruptcy Court's ruling based on TUFTA. ................................. 12

  b.    The Vitol Complaint did not allege facts sufficient to put at issue actual fraud under
  TUFTA as the basis for Brass's debt to Vitol at issue. ...................................................... 14

  c.    Vitol's purported allegations of the badges of fraud especially failed to meet the
  particularity requirements of Rule 9(b). ........................................................................... 18

  d.    Brass opposed Vitol's attempted amendment of its allegations with respect to Section
  523(a)(2)(A) in the Joint Pretrial Statement and at trial. ...................................................... 21

  e.    Brass was able oppose Vitol's amendment of its allegations with respect to Section
  523(a)(2) in the Joint Pretrial Statement while declining to oppose Vitol's clarification of
  the basis for its Section 523(a)(6) claim in the Joint Pretrial Statement. ................................ 26

II.    Reply to Vitol's argument regarding the effect of the Settlement Agreement and Agreed
Final Judgment. ............................................................................................................ 26

  a.    Unlike the settlement agreement at issue in Archer v. Warner, the Settlement
  Agreement here specifically addressed the issue of avoidability of transfers from GCAC to
  Brass under TUFTA. ..................................................................................................... 27

  b.    Unlike the consent judgment at issue in Brown v. Felsen, the Agreed Final Judgment
  here denied Vitol's requested relief to avoid transfers from GCAC to Brass. ..................... 29

  c.    The Bankruptcy Court's ruling in the Summary Judgment Order, incorporated into the
  Bankruptcy Court Judgement, did not address whether the Settlement Agreement and
  Agreed Final Judgment resolved liability under TUFTA being the basis for Brass's debt to
  Vitol. ......................................................................................................................... 30

III.   Reply to Vitol's arguments regarding Section 523(a)(2)(A). ......................................... 31

  a.    Binding precedent, including Cohen v. de la Cruz, requires a causal connection between
  the act of obtaining money by fraud and the debt for such fraud to be nondischargeable
  under Section 523(a)(2)(A). ........................................................................................... 32

b.    The Bankruptcy Court did not rule that veil piercing was the basis for Brass's liability to Vitol, and any such ruling would have been reversible error. .......................................... 35

c.    That any debt that Brass owes under TUFTA would be owed to the GCAC bankruptcy estate is relevant because Brown v. Felsen and Archer v. Warner indicate that courts must determine the true nature of the debt where there is a settlement agreement or agreed judgment. ....................................................................................................................... 37

d.    Vitol concedes that that the Bankruptcy Court did not make a finding on Brass's actual intent, which requires remand to the Bankruptcy Court. ........................................... 38

e.    The Bankruptcy Court misapplied Ritz in failing to evaluate whether the debt was the result of or on account of Brass obtaining money by fraud under the different circumstances present here. ....................................................................................................................... 39

IV.    Reply to Vitol's arguments regarding Section 523(a)(6). ............................................... 40

a.    Cohen v. de la Cruz indicates that there must be a causal connection between the willful injury and the debt for such fraud to be nondischargeable under Section 523(a)(6). ........... 40

b.    Vitol waived any basis for the debt being nondischargeable under Section 523(a)(6) other than because it arose from a willful or malicious injury to Vitol resulting from Brass's knowing breach of a clear contractual obligation to Vitol. ................................................. 41

V.    Response to Vitol's arguments regarding its cross appeal. ............................................ 43

a.    Under any potential basis for the Bankruptcy Court's ruling, the amount of the nondischargeable debt would be, at most, the amount that GCAC owed to Vitol prior to the Settlement Agreement. ......................................................................................................... 45

b.    Under the basis for the Bankruptcy Court's ruling, the amount of the nondischargeable debt would also be limited to the value of the transfers from GCAC to Brass. 48

c.    To the extent that this Court concludes that the nondischargeable debt that Brass owed to Vitol is not limited to the $3.77 million amount that GCAC owed to Vitol prior to the Settlement Agreement, the proceeding should be remanded to the Bankruptcy Court for further determination. ........................................................................................................... 49

CONCLUSION ..................................................................................................... 53

CERTIFICATE OF SERVICE ................................................................................ 54

CERTIFICATE OF COMPLIANCE WITH BANKRUPTCY RULE 8015(a)(7)(B) ................ 54

# TABLE OF AUTHORITIES

## Cases

| Citation | Pages |
|---|---|
| *Archer v. Warner*, 538 U.S. 314 (2003). | 27, 36, 37, 45 |
| *Beeler v. Berryhill*, 381 F. Supp. 3d 991 (S.D. Ind. 2019). | 13 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). | 13, 17 |
| *Brown v. Felsen*, 442 U.S. 127 (1979). | 29, 37 |
| *Cohen v. de la Cruz*, 523 U.S. 213 (1998). | 32, 41 |
| *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir. 1987). | 13 |
| *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188 (5th Cir. 1998). | 42 |
| *Excel Modular Scaffold & Leasing Co. v. Occupational Safety & Health Rev. Comm'n*, 943 F.3d 748 (5th Cir. 2019). | 25 |
| *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016). | 33 |
| *In re Brown Med. Ctr., Inc.*, 552 B.R. 165 (S.D. Tex. 2016). | 20 |
| *In re Carpenter*, 453 B.R. 1 (Bankr. D.D.C. 2011). | 33 |
| *In re Cottrell*, 2022 WL 4291390 (D. Conn. Sept. 16, 2022). | 45 |
| *In re Exide Techs.*, 601 B.R. 271 (Bankr. D. Del. 2019). | 33, 40 |
| *In re Munoz*, 2018 WL 4697328 (D. Colo. July 3, 2018). | 45 |
| *In re Ozcelebi*, 635 B.R. 467 (Bankr. S.D. Tex. 2021). | 15 |
| *In re Ozcelebi*, 640 B.R. 884 (Bankr. S.D. Tex. 2022). | 32 |
| *In re Pace*, 456 B.R. 253 (Bankr. W.D. Tex. 2011). | 39 |
| *In re Ritz*, 832 F.3d 560 (5th Cir. 2016). | 38, 45, 51 |
| *In re Ritz*, 567 B.R. 715 (Bankr. S.D. Tex. 2017). | 20 |
| *In re Sabban*, 600 F.3d 1219 (9th Cir. 2010). | 40 |
| *In re Sabban*, 384 B.R. 1 (B.A.P. 9th Cir. 2008). | 33 |
| *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987). | 36 |
| *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010). | 17 |
| *In re Warner*, 283 F.3d 230 (4th Cir. 2002). | 27 |
| *In re Wong*, 802 F. App'x 280 (9th Cir. 2020). | 45 |
| *Jones v. Wells Fargo Bank, N.A.*, 858 F.3d 927 (5th Cir. 2017). | 17, 37 |

| | |
|---|---|
| *Qwest Commc'ns Corp. v. Herakles, LLC*, 2008 WL 783347 (E.D. Cal. Mar. 20, 2008). | 15 |
| *State of Tex. By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker*, 142 F.3d 813 (5th Cir. 1998). | 43 |
| *Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848 (N.D. Tex. July 31, 2020). | 20 |
| *U.S. ex rel. Stewart v. The Louisiana Clinic*, 2002 WL 257690 (E.D. La. Feb. 22, 2002). | 17 |
| *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391 (5th Cir. 1983). | 13 |
| *Wilson v. Muckala*, 303 F.3d 1207 (10th Cir. 2002). | 43 |

## Statutes

| *Citation* | *Pages* |
|---|---|
| 11 U.S.C. § 523 | *Passim* |
| Tex. Bus. & Com. Code § 24.005 | 13 |
| Tex. Bus. & Com. Code § 24.008 | 28 |
| Tex. Bus. & Com. Code § 24.009 | Passim |
| Tex. Bus. Orgs. Code § 21.223 | 35, 36, 47 |

## Rules

| *Citation* | *Pages* |
|---|---|
| Fed. R. Civ. P. 9 | *Passim* |
| Fed. R. Civ. P. 8 | 14 |
| Fed. R. Civ. P. 15 | 17 |
| Fed. R. Civ. P. 52 | 35 |

## Treatises

| *Citation* | *Pages* |
|---|---|
| 10 COLLIER ON BANKRUPTCY ¶ 7052.02 | 31, 36, 38 |

## SUMMARY OF ARGUMENT

Much of Vitol's responsive briefing is directed at different arguments regarding a different decision that was based on different allegations. The rest largely dwells in ambiguity where none exists. Vitol's position requires this strategy because focusing on the statutory requirements, the interplay of relevant authority, and the relevant facts is fatal to Vitol's position.

Notwithstanding efforts to muddy the waters, the allegations in Vitol's amended complaint clearly indicated that the fraud asserted by Vitol was about Brass obtaining money from Vitol. Vitol was bound by its clear and specific allegation that "[Brass] obtained money from Vitol" as a judicial admission and the Bankruptcy Court erred by ruling based on findings contradictory to that judicial admission. Further, Vitol was required to prove the fraud alleged in its complaint and submitted to the Bankruptcy Court for determination. Vitol cannot point to ambiguous statements in its amended complaint that would not meet the requirements of Rule 9(b) to get around this fundamental requirement. And although Vitol attempted to raise alternative allegations with respect to Section 523(a)(2)(A) through the Joint Pretrial Statement—immediately before trial—Brass opposed the *de facto* amendment in the Pretrial Statement and at trial. Brass did not consent to the trial of different issues. It is of no consequence that Brass consented to Vitol's clarification

with respect to Vitol's allegations under Section 523(a)(6) because a party can consent to one thing and decline to do so for another.

With respect to the effect of the Settlement Agreement and Agreed Final Judgment, Vitol glosses over Brass's arguments about why they are different from the ones at issue in *Archer v. Warner* and *Brown v. Felsen*. The Settlement Agreement expressly and specifically addressed the avoidability of transfers from GCAC to Brass, and the Agreed Final Judgment denied Vitol's request to avoid the transfers. That is critical because liability under TUFTA—the basis for the Bankruptcy Court's ruling—only exists if the transfers are voidable. While the Settlement and Agreed Final Judgment may not have precluded every theory of nondischargeability, they resolved the particular issues necessary for the Judgment and Order. The Bankruptcy Court did not address this in the Summary Judgment Order or the Judgment and Order and erred if it quietly did.

Vitol's responsive arguments about Section 523(a)(2)(A) largely cut against Vitol's position or are irrelevant. *Cohen v. de la Cruz* stands for nearly the opposite of what Vitol says it does. As *Cohen* and cases interpreting it indicate, only debts "arising from" or "on account of" fraudulently obtaining money are excepted from discharge under the statute. Vitol even acknowledged that in its contentions of law submitted in the Joint Pretrial Statement notwithstanding its position on appeal. Vitol's arguments about veil piercing are inapposite because that is not how the

Bankruptcy Court ruled, it was not submitted even under the expanded theory Vitol attempted to raise in the Pretrial Statement, and it is absent from the Vitol State Court Counterclaim. Vitol submits no meaningful argument about why the direction from *Archer* and *Brown* to look behind settlement agreements and agreed judgments—absent resolution of the relevant issues thereby—does not mean that the GCAC bankruptcy trustee is the only party who can assert rights arising under TUFTA. Further, Vitol concedes that the Bankruptcy Court did not make an express finding about Brass's actual intent to hinder, delay, or defraud Vitol. On remand in *Husky Int'l Elecs., Inc.* v. *Ritz*, the Fifth Circuit made clear that determinations of actual intent must be made by the trier of fact. It is not enough that the evidence was sufficient. The Judgment and Order should therefore be vacated and the matter remanded to the Bankruptcy Court for further proceedings even if this court is convinced by Vitol's arguments. And Vitol's arguments regarding *Ritz* miss the point—the Bankruptcy Court misapplied the law when it uncritically applied *Ritz* irrespective of the material differences between *Ritz* and this case.

Vitol's responsive arguments about Section 523(a)(6) are even further off the mark. *Cohen* indicates that the existence of a willful and malicious injury does not end the inquiry. There must also be a causal connection between the injury and the debt. But more fundamentally, Vitol's argument is not about the issue that was before the Bankruptcy Court—whether the debt that Brass owed Vitol arose from a

willful or malicious injury to Vitol resulting from Brass's knowing violation of a clear contractual obligation to Vitol. Not only did the Bankruptcy Court not find that there was a knowing breach of a clear contractual right, but such a finding would be contrary to the other findings that the Bankruptcy Court made. Vitol waived the theory underlying the Bankruptcy Court's ruling and that Vitol's arguments attempt to defend.

With respect to Vitol's arguments in support of its cross appeal, the Bankruptcy Court correctly limited amount of any nondischargeable debt to the amount that Vitol proved GCAC owed to Vitol prior to the Settlement Agreement. Assuming the Settlement Agreement and Agreed Final Judgment did not completely resolve the issues such that looking behind them was required—in which case there would be no nondischargeable debt—Brass could not have owed more than that amount to Vitol under TUFTA or Section 21.223 veil piercing. Vitol does not argue error in the Bankruptcy Court's determination of the amount that GCAC owed to Vitol prior to the Settlement Agreement. Moreover, under TUFTA—the basis for the Bankruptcy Court's ruling—the debt was also limited to the amount of the transfers from GCAC *to Brass*. A person is not liable under TUFTA for transfers to and for the benefit of other persons. And the Bankruptcy Court did not rule that every transfer to Brass was a fraudulent transfer, the record does not require this conclusion, and the Fifth Circuit has indicated that actual intent must be determined

by the trier of fact. If the Bankruptcy Court erred in limiting the nondischargeable debt Brass owed to Vitol to the amount that GCAC owed to Vitol prior to the Settlement Agreement—and absent reversal for one of the reasons asserted by Brass—that would require remanding the proceeding to the Bankruptcy Court. This Court should not engage in weighing the evidence and recalculating the amount.

While Brass contends that the Bankruptcy Court's judgment should be reversed for the reasons stated in his principal brief and below, the matter would still need to be remanded to the Bankruptcy Court for further determination even if Vitol's main contentions are correct. Upon any such remand, the Bankruptcy Court should be able to consider the other assertions of error asserted, even if those issues do not rise to the level of reversible error for this Court, and other arguments that Brass may have.

## ARGUMENT

### I.     Reply to Vitol's arguments regarding the allegations pleaded and presented to the Bankruptcy Court for decision.

Vitol asserts that it pleaded what the Bankruptcy Court held. (*E.g.*, Vitol Brief, p. 42). But this is simply not the case.

With respect to Section 523(a)(2)(A), Vitol's amended complaint asserted that the basis for nondischargeability was that Brass obtained money from Vitol. (Vitol Complaint, ¶ 23 [ROA 8-1 at 90]). In order for Brass's liability to Vitol prior to the Settlement Agreement being based on TUFTA—as the Bankruptcy Court held— Brass had to receive money from GCAC. Although Vitol attempted to expand the basis for its claim in the Joint Pretrial Statement, Brass opposed this *de facto* amendment and reiterated his opposition at trial.

With respect to Section 523(a)(6), Vitol's contentions in the Joint Pretrial Statement—which Brass did not oppose—were that the debt that Brass owed to Vitol "arose from a willful or malicious injury resulting from Brass's knowing breach of a clear contractual obligation to Vitol." (Joint Pretrial Statement, p. 5 [ROA 8-3 at 5]). The Bankruptcy Court implicitly rejected this contention, finding that Brass believed that there was a joint venture and concluding that Vitol failed to prove certain aspects of the alleged agreement between GCAC and Vitol. (Judgment and Order, pp. 3, 16 [ROA 8-20 at 328, 341]).

And despite Vitol's protestations to the contrary (Vitol Brief, p. 52), Vitol adequately pleaded two badges of fraud at most.[1] The language that Vitol points to does not actually fit with the badges of fraud. And even if it did, these would be improper "shotgun pleadings" insufficient to put Brass on notice of the issue.

Importantly, Rule 9(b) applies to both Section 523(a)(2)(A) and actual fraud under TUFTA. Vitol does not dispute this, but rather argues that a Rule 12(b)(6) motion to dismiss is the only remedy available. (Vitol Brief, p. 53). Under Vitol's view, if a plaintiff sufficiently alleges one set of facts constituting actionable fraud, it can change its theory to rely on different set of facts at trial. This would defeat the entire purpose of Rule 9(b). A plaintiff alleging fraud must indicate the particular conduct that constitutes the fraud in its complaint and prove that conduct at trial.

   *a. Vitol's allegation that Brass obtained money "from Vitol" is a judicial admission that defeats the basis of the Bankruptcy Court's ruling based on TUFTA.*

The Bankruptcy Court's ruling that approximately $3.77 million of the debt that Brass owed to Vitol is non-dischargeable was based on its determination that Brass was liable to Vitol in that amount for actual fraudulent transfers under TUFTA prior to the Settlement Agreement. (Judgment and Order, pp. 8, 13 [ROA 8-20 at 333, 338; *see also id.* at p. 9, n. 55 [ROA 8-20 at 334] ("Vitol uses TUFTA to establish a nondischargeable prepetition debt.")). Liability under TUFA required a

---

[1] Brass contends even these were not specifically pleaded sufficient with Rule 9(b).

finding that Brass received transfers ***from GCAC*** in at least that amount. *See* Tex. Bus. & Com. Code §§ 24.005(a) (indicating that the transfer must be from the debtor to be avoidable), 24.009(b) (indicting that the liability against a transferee under TUFA is predicated on a transfer being avoidable).

In its amended complaint, however, Vitol alleged that Brass obtained money "***from Vitol*** via false pretenses, false representations, and/or actual fraud." (Vitol Complaint ¶ 23 [ROA 8-1 at 90] (emphasis added)). Factual assertions in pleadings are judicial admissions that are conclusively binding on the party that made them. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983); *Beeler v. Berryhill*, 381 F. Supp. 3d 991, 994 (S.D. Ind. 2019) ("A plaintiff is bound by her complaint allegations as judicial admissions . . . ."); *see also Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (holding that a party could not present evidence contradicting a factual assertion in its pleading). The Bankruptcy Court's ruling based on findings inconsistent with Vitol's complaint ignored this judicial admission and was therefore an error of law. A claim must be supported by evidence showing facts *consistent* with the allegations in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

Much of the trial was about whether Brass or GCAC obtained money from Vitol, as alleged in Vitol's amended complaint. (*E.g.*, Sept. 1, 2022, Tr. 13:13-15, 46:14-20,  48:5-61:19,  82:11-84:9,  87:22-88:3,  153:19-154:10,  158:18-163:12,

13

173:25-174:19 [ROA 8-6 at 176, 209, 211-24, 245-47, 250-52; ROA 8-7 at 16-17, 21-26, 36-37]; Sept. 2, 2022, Tr. 31:20-32:21, 106:24-109:2, 128:7-134:25, 150:4-19 [ROA 8-7 at 89-90, 164-67, 186-92, 208]; Sept. 7, 2022, Tr. 35:3-36:7, 223:24-224:15, 210:1-9, 254:24-256:6 [ROA 8-5 at 159-60; ROA 8-6 at 34, 47-48, 78-80]; Sept. 16, 2022, Tr. 97:14-99:5, 100:5-14, 113:5-12, 225:17-226:7 [ROA 8-8 at 52-55, 68, 180-81]). However, Vitol failed to prove what it alleged. The Bankruptcy Court found that GCAC received funds from third parties, not Vitol. (Judgment and Order, p. 3 [ROA 8-20 at 328]).

> ### b. The Vitol Complaint did not allege facts sufficient to put at issue actual fraud under TUFTA as the basis for Brass's debt to Vitol at issue.

Rule 9(b) requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake in addition to the general notice of the claim required by Rule 8(a)(2). Vitol does not dispute that Rule 9(b) applies to actions under Section 523(a)(2)(A) and for actual fraudulent transfer under TUFTA, but rather what that means here.

Vitol argues that its amended complaint alleged facts sufficient to state with particularity that the basis for the debt on account of actual fraud under Section 523(a)(2)(A) was a fraudulent transfer under TUFTA. According to Vitol: "Specifically, Vitol pled 'the funds the Debtor misappropriated are traceable to transactions financed by Vitol and were used by the Debtor for his own direct and

personal benefit and to shield GCAC's assets from collection.'" (Vitol Brief, p. 49). This does not meet the requirements of Rule 9(b), especially in light of the specific allegation that Brass obtained funds "from Vitol."

Vitol also argues that its amended complaint met the particularity requirement because "Vitol specifically 'realleged and incorporated the preceding paragraphs.'" (Vitol Brief, p. 42-43). But these other allegations do not provide the particularity required by Rule 9(b). In essence, Vitol asserts that its amended complaint is a "shotgun pleading." The problem with these kinds of complaints is that the inherent lack of clarity that impairs a defendant's ability to determine the grounds upon which the claim is being asserted. *In re Ozcelebi*, 635 B.R. 467, 474 (Bankr. S.D. Tex. 2021). Vitol's amended complaint did not put Brass on notice that that it was seeking to demonstrate that the debt that Brass owed to Vitol reflected in the Settlement Agreement was for actual fraudulent transfers under TUFTA.

While Vitol could have made alternative and inconsistent allegations in the alternative it did not do so here.[2] Nothing prevented Vitol from alleging that the debt Brass owed to Vitol under the Settlement Agreement was for actual fraudulent transfers from GCAC to Brass under TUFTA and the particular badges of fraud. But

---

[2] While inconsistent allegations can be made in separate claims or defenses under Federal Rule of Civil Procedure 8(e)(2), the inconsistent allegations cannot be made with respect to the same cause of action. *Qwest Commc'ns Corp. v. Herakles, LLC*, 2008 WL 783347, at *12 (E.D. Cal. Mar. 20, 2008) (quoting *Steiner v. Twentieth Century-Fox Film Corp.*, 140 F.Supp. 906, 908 (C.D. Cal. 1953)).

instead, Vitol chose to assert as its basis for relief that Brass obtained money from Vitol by fraud. *That* is what Vitol needed to prove at trial and the issue that was before the Bankruptcy Court for decision.

Vitol also argues that Rule 9(b) is irrelevant because the proper means to assert a challenge to the adequacy of a pleading is a Rule 12(b)(6) motion to dismiss. (Vitol Brief, p. 53). But this misses the point. Vitol alleged in its amended complaint that beginning in August 2017, Brass made specific false representations about the use of funds loaned from Vitol and the repayment of those funds and that Vitol relied upon these representations in loaning the money. (Vitol Complaint ¶ 8 [ROA 8-1 at 85-86]). That is sufficient to state a claim for relief under Section 523(a)(2)(A) and is *consistent* with obtaining money from Vitol, as alleged. Vitol also alleged that it suffered an injury as the result of these fraudulent misrepresentations and misappropriation of money belonging to Vitol and that such injury was willful and malicious.[3] (Vitol Complaint ¶ 35 [ROA 8-1 at 91]). While the allegations of misrepresentations would be sufficient to state claims for which relief could be granted, those allegations were *rejected* by the Bankruptcy Court.[4] (Judgment and Order, pp. 7-8 [ROA 8-20 at 332-33]).

---

[3] Vitol later clarified the basis for its basis under Section 523(a)(6) in the Joint Pretrial Statement without opposition from Brass.

[4] The Bankruptcy Court indicated that this was the basis for Vitol's amended complaint in its ruling on summary judgment. (Summary Judgment Order, p. 6 [ROA 8-2 at 128-29 (indicating that the Settlement Agreement and Agreed Final

Vitol's position that it could adequately plead one set of allegations stating an actionable claim for fraud and obtain judgment based on inconsistent, inadequately pleaded facts would destroy the purpose of Rule 9(b). On its most fundamental level, Rule 9(b) ensures that the defendant will have sufficient information relating to the alleged fraud to defend against the allegations. *U.S. ex rel. Stewart v. The Louisiana Clinic*, 2002 WL 257690, at *2 (E.D. La. Feb. 22, 2002) (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). If a plaintiff could just pull a bait and switch, Rule 9(b) would be rendered worse than meaningless. It is foundational that a plaintiff has to prove facts consistent with the allegations in its complaint. *See Twombly*, 550 U.S. at 563 (indicating that plaintiffs must present evidence consistent with their pleadings); *cf.* Fed. R. Civ. P. 15(b)(2) (providing a mechanism for amendment of a complaint after trial). And judgment based on theories that are not pleaded constitute reversible error. *See Jones v. Wells Fargo Bank, N.A.*, 858 F.3d 927, 933–34 (5th Cir. 2017) ("Because Jones neither pleaded nor tried his case on the frivolous-lawsuit theory, and because Wells Fargo did not consent to a post-trial amendment, it was improper for the court to award damages against Wells Fargo on that theory.").

---

Judgment did not resolve fraud or any other tort claim). Where a complaint sufficiently pleads certain matters under Rule 9(b), it can still proceed on other matters that are properly pleaded. *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010).

Despite Vitol's assertions to the contrary (Vitol Brief, p. 45), Brass maintained both at the trial and in Brass's papers on appeal the prejudice from Vitol's attempted expansion of the basis for its nondischargability action. At the trial, Brass asserted that if the issue was not that there was a loan—i.e., money from Vitol—the evidence would have been substantially different: "We would have had accountants, we would have people coming up here with numbers, but they have to first prove that there was a loan because that's what they pled. That's what we relied on. Then we sent discovery to confirm that." (Sept. 28, 2022, Tr. 184:19-23 [ROA 8-20 at 277]). And Brass's principal brief, Brass argued that there was no notice that any of the badges of fraud under TUFTA were at issue was particularly problematic. (Brass Brief, p. 31).

### c.   *Vitol's purported allegations of the badges of fraud especially failed to meet the particularity requirements of Rule 9(b).*

Vitol argues that its amended complaint sufficiently plead four of the five badges of fraud that the Bankruptcy Court found and that it was appropriate for the Bankruptcy Court to *sua sponte* raise and evaluate additional badges of fraud. (Vitol Brief, pp. 52-54). Neither contention is true here.

Vitol's own brief demonstrates that Vitol's allegations with respect to the badges of fraud were particularly deficient. Vitol claims that it alleged "(1) transfers to insiders, (2) of substantially [all of] GCAC's assets, (3) without receiving reasonable consideration in return, and (4) while GCAC was insolvent." (Brass

Brief, p. 52). The allegations state with particularity *at most* that the transfers were

to insiders and that Vitol was insolvent:

> Transfers to Insiders—Vitol seemingly asserts that a portion of paragraph 21 of its amended complaint adequately pleaded that GCAC made transfers to insiders. The relevant language is "[Brass] used GCAC to funnel millions of dollars to the Debtor and or other entities." While this does reference insiders, the transfers that Vitol alleged were of money from Vitol. This would not give rise to liability under TUFTA.

> Substantially all of GCAC's Assets—Vitol seemingly asserts that a portion of paragraph 9 of its amended complaint adequately pleaded that the transfers from GCAC to Brass were of substantially all of GCAC's assets. The relevant language is "[t]he financing from Vitol was GCAC's only source of working capital and its trading facilitated by Vitol was GCAC's only line of business . . . ." This language does not even vaguely indicate what Vitol implies.

> Without Receiving Reasonably Equivalent Value—Vitol seemingly asserts that paragraph 11 of its amended complaint adequately pleaded that GCAC did not receive reasonably equivalent value for the transfers from it to Brass. The relevant language is "Brass caused GCAC to transfer to both himself and his mother millions of dollars in undocumented and evergreen loans . . . these transfers were loans in name only; GCAC did not have any written agreements for these loans to Brass and his mother and there were no recorded payment terns, due dates, or interest rates." This is not the kind of clear statement that would put a defendant on notice of a plaintiff's intent to prove an actual fraudulent transfer evidenced by this badge of fraud, especially in light of the express allegation that the basis for Vitol's claims was that Brass obtained money from Vitol.

> While GCAC was Insolvent— Vitol seemingly asserts that portions of paragraphs 9 of its amended complaint adequately pleaded that the GCAC was insolvent when the transfers from GCAC to Brass were made. The relevant language is "only days before Vitol and GCAC first began working together under the interim financing agreement—GCAC's debts and liabilities were nearly double its assets" and "[u]nbeknownst to Vitol, GCAC was insolvent during the pendency of the interim agreement." While this references insolvency, the relevant question for the badge of fraud under TUFTA is whether GCAC was insolvent when it made the transfers to Brass.

A complaint that requires cherry-picking vague statements from various parts of the complaint (among other allegations in the relevant paragraphs) and incorporating them with specific, inconsistent allegations does not satisfy Rule 9(b) or provide notice that the plaintiff intended to prove that the debt was on account of an actual fraudulent transfer proved by the badges of fraud.

Nor is it appropriate for a court considering a Section 523(a)(2)(A) claim to *sua sponte* raise additional unpled badges of fraud with respect to TUFTA where the relevant complaint does not indicate that the badges of fraud are at issue. Vitol cites the bankruptcy court decision on remand in *Ritz* in support of its contention. (Vitol Brief, p. 54). But while the bankruptcy court did *sua sponte* consider additional badges of fraud in that case, it noted that (a) certain authority indicated that a plaintiff must actually plead a specific badge of fraud for a court to consider that badge and (b) that the bankruptcy court found six of the badges of fraud that were pleaded and those would be sufficient to establish the debtor's actual intent. *In re Ritz*, 567 B.R. 715, 742 n. 23 (Bankr. S.D. Tex. 2017). The *sua sponte* evaluation was not a necessary part of the bankruptcy court's ruling and is contradicted by other authority. *See In re Brown Med. Ctr., Inc.*, 552 B.R. 165, 171-72 (S.D. Tex. 2016) (dismissing a TUFTA claim where the plaintiff failed to specifically plead more than two badges of fraud); *Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848, at *13 (N.D. Tex. July 31, 2020) (dismissing a TUFTA claim where the plaintiff failed to specifically plead

any badges of fraud). Perhaps a court can consider unpled badges of fraud where the complaint provides notice that the badges of fraud under TUFTA will be a material issue, but that predicate was not present here.

> ### d. Brass opposed Vitol's attempted amendment of its allegations with respect to Section 523(a)(2)(A) in the Joint Pretrial Statement and at trial.

Vitol calls Brass's objection to the expansion of the basis for Vitol's Section 523(a)(2)(A) claims "disingenuous at best" and contends that Brass's statement was solely related to a red herring argument about whether there was a loan or a joint venture argument. (Vitol Brief, p. 57). This is contradicted by what Brass asserted in the Joint Pretrial Statement, arguments presented at trial, and the thrust of the evidence presented to the Bankruptcy Court.

In the Joint Pretrial Statement, Vitol sought to assert that its basis for its claim under Section 523(a)(2) was not only that Brass's debt to Vitol was for money obtained from Vitol through false representations—as alleged in the Vitol Complaint—but also for money that GCAC transferred to Brass amounting to an actual fraudulent transfer. (Joint Pretrial Statement, p. 3-4 [ROA 8-3 at 3-4]). Brass addressed his responsive contentions to these allegations separately. Regarding the allegations that Brass obtained money from Vitol, Brass contended that the evidence would show that there was no lender/borrower relationship and that instead there was a joint venture. (Joint Pretrial Statement, p. 5-6 [ROA 8-3 at 5-6]). Regarding

the new allegations and basis, Brass asserted that "Vitol does not have evidence to show that Vitol's money or the proceeds from Vitol's assets were transferred by GCAC to [Brass]" and that "Vitol is bound by its pleadings and the factual allegations contained in their pleadings, and as a result cannot prevail under Section 523(a)(2)." (Joint Pretrial Statement, p. 6 [ROA 8-3 at 6]). This was specifically in reference to the additional basis that Vitol raised in the Joint Pretrial Statement. Brass clearly and unambiguously indicated that he did not consent to trial of an issue other than what Vitol alleged in its amended complaint—i.e., that Bras obtained money ***from Vitol*** via false pretenses, false representations, and/or actual fraud. Brass even pointed out that this was the evidence that Vitol needed but did not have.

The contested issues of fact indicated in the Joint Pretrial Statement reflected that the dispute between the parties centered on whether money was obtained from Vitol. Among the factual disputes were whether (a) Vitol ever loaned GCAC any money; (b) Vitol ever loaned Brass any money; and (c) whether any funds transferred by GCAC to Brass or his mother belonged to Vitol. (Joint Pretrial Statement, p. 7-8 [ROA 8-3 at 7-8] (subparagraphs a, b, and j)). What was ***not*** expressly indicated as a point of dispute was anything related to a fraudulent transfer under TUFTA being the basis for Brass's debt to Vitol.

Brass's opposition to any expansion of the basis of Vitol's asserted claims was reiterated at trial. In opening arguments, Brass's attorneys argued that Vitol had to show the fraud alleged in its amended complaint:

> And then when you look at the complaint, they've asked for relief. Three causes of action. The first one, 523(a)(2). They're bound by their pleadings. And in their pleadings, what do they tell this Court? We're just a lender. In my responses to interrogatories, I asked them, what's your relationship? Borrower/lender. Under 523(a)(2), they have to show this Court what they pled.
>
> . . .
>
> They have to show that they loaned him this money. They have to show and prove what they pled. And there will be no evidence before this Court that there was money loaned. They want to just jump to the end. Oh, he transferred assets. But they have to first show this Court that there was money lent by Vitol to him and then he did something wrong after the fact.

(Aug. 30, 2022, Tr. 34:16-35:4 [ROA 8-6 at 123-124]). Brass's attorneys again argued this in connection with Brass's Rule 52(c) motion:

> So in the lawsuit and in discovery that we talked about in court, the whole time they said borrower lender, borrower lender, we loaned them money, they took our money. Look at A(2). It says clear as day. A(2) is very simple. Four sentences I believe. We loaned them money, right? That's what they said the whole time. And then a week before trial, they file a joint pretrial statement where they start talking about, well, Judge, if you decide it was a joint venture, right, we still win. And that piece is where I write Vitol claims that its debt is nondischargeable because Brass fraudulently obtained the funds it borrowed from Vitol. Vitol is bound by its pleadings and the factual

allegations contained in their pleadings and as a result, cannot prevail. Right?

We're not accepting this argument that they're coming up with now. Up until the day of trial, we've been fighting this fight for a long time. And the whole time they have -- that's why I sent this discovery. Let me make sure it's really clear what you're telling me that it's [a loan] because this case would have been so different had they come in and said, we agree it was a joint venture.

We would have had accountants, we would have people coming up here with numbers, but they have to first prove that there was a loan because that's what they pled. That's what we relied on. Then we sent discovery to confirm that.

(Sept. 28, 2022, Tr. 183:23-184:23 [ROA 8-20 at 277-78]). And it was raised in

Brass's closing argument:

They allege, "We loaned them 10 million." That's the basis of the lawsuit, and I believe we were able -- or they were unable to prove that that was true. Therefore, this lawsuit stops, and they're done, and you must deny their relief at that point.

(Oct. 13, 2022, Tr. 24:15-19).

Further, the parties elicited substantial testimony about whether funds were

delivered by Vitol to GCAC or Brass. (*See, e.g.*, Sept. 1, 2022, Tr. 13:13-15, 46:14-

20, 48:5-61:19, 82:11-84:9, 87:22-88:3, 153:19-154:10, 158:18-163:12, 173:25-

174:19 [ROA 8-6 at 176, 209, 211-24, 245-47, 250-52; ROA 8-7 at 16-17, 21-26,

36-37]; Sept. 2, 2022, Tr. 31:20-32:21, 106:24-109:2, 128:7-134:25, 150:4-19 [ROA

8-7 at 89-90, 164-67, 186-92, 208]; Sept. 7, 2022, Tr. 35:3-36:7, 223:24-224:15,

210:1-9, 254:24-256:6 [ROA 8-5 at 159-60; ROA 8-6 at 34, 47-48, 78-80]; Sept. 16,

2022, Tr. 97:14-99:5, 100:5-14, 113:5-12, 225:17-226:7 [ROA 8-8 at 52-55, 68, 180-81])). While the Bankruptcy Court ultimately rejected Brass's contention that the relationship between GCAC and Vitol was a joint venture, it also rejected Vitol's allegations that Vitol provided money to GCAC or Brass. (Judgment and Order, p. 3 [ROA 8-20 at 328] (finding that Vitol would purchase product and title it in its own name and that GCAC received funds from third parties). And it was Vitol that had to prove the fraud alleged in its complaint; Brass did not need to prove his asserted alternative.

It is beyond reasonable dispute that Brass did not consent to the trial of any issues beyond those properly raised in Vitol's amended complaint. Brass repeatedly opposed the attempted *de facto* amendment. The bulk of evidence presented at trial was relevant to this. And the evidence on which the Bankruptcy Court's ruling relies—GCAC's bank statements—was equally relevant to the allegations that Vitol made in its complaint of money being obtained from Vitol. *See Excel Modular Scaffold & Leasing Co. v. Occupational Safety & Health Rev. Comm'n*, 943 F.3d 748, 755 (5th Cir. 2019) (holding that failure to object to evidence relevant to an unpleaded issue does not indicate consent if that evidence is relevant to a pleaded issue).

e.  *Brass was able oppose Vitol's amendment of its allegations with respect to Section 523(a)(2) in the Joint Pretrial Statement while declining to oppose Vitol's clarification of the basis for its Section 523(a)(6) claim in the Joint Pretrial Statement.*

Vitol argues that Brass "tries to eat his cake and have it too" by holding Vitol to its allegations in the Vitol Complaint with respect to Section 523(a)(2) but not with respect to Section 523(a)(6). (Vitol Brief, p. 53). This misunderstands the argument. Brass did not oppose Vitol's clarification of its asserted Section 523(a)(6) claim in the Joint Pretrial Statement. Brass did, however, oppose Vitol's attempted expansion of its asserted 523(a)(2) claim. The reason that the Joint Pretrial Statement had a different effect on these causes of action is, at least in part, because of the different actions taken with respect to each.[5] Brass consented to one and not the other. Vitol submits no argument about why that was improper.

## II.  Reply to Vitol's argument regarding the effect of the Settlement Agreement and Agreed Final Judgment.

Vitol asserts that the Bankruptcy Court properly applied the Supreme Court decisions in *Brown v. Felsen* and *Archer v. Wagner* in concluding that the Settlement Agreement and Agreed Final Judgment did not preclude a nondischargeablity judgment. (Vitol Brief, p. 32). But Vitol's argument ignores the specific resolution

---

[5] Also, Rule 9(b) only applies to actions sounding in fraud. The theory advanced by Vitol in the Joint Pretrial Statement with respect to Section 523(a)(6)—a knowing breach of clear contractual obligation—was not based on alleged fraud. In any event, whether Brass could have opposed Vitol's clarification with respect to Section 523(a)(6) is immaterial because he did not.

of any potential avoidance of transfers under TUFTA in the Settlement Agreement, the relief Vitol requested that was *denied* by the Agreed Final Judgment, and what the Bankruptcy Court actually ruled in the Summary Judgement Order.

> a. *Unlike the settlement agreement at issue in Archer v. Warner, the Settlement Agreement here specifically addressed the issue of avoidability of transfers from GCAC to Brass under TUFTA.*

The settlement agreement at issue in *Archer v. Warner* involved only a general, blanket release of all claims. *Archer v. Warner*, 538 U.S. 314, 317 (2003); *In re Warner*, 283 F.3d 230, 237 (4th Cir. 2002) (describing the release as a "general release"). As described, by the Supreme Court, "[t]he Archers executed releases 'discharging' the Warners 'from any and every right, claim, or demand' that the Archers 'now have or might otherwise hereafter have against' them, 'excepting only obligations under' the promissory note and related instruments." *Archer*, 538 U.S. at 317. In the Settlement Agreement here, however, Vitol expressly and specifically released Brass and GCAC from "any claims under Chapter 24 of the Texas Business and Commerce Code . . . ." (Settlement Agreement, p. 1 [ROA 8-13, p. 115]).[6]

The four corners of the Settlement Agreement show that the parties intended to resolve the issue of avoidance of transfers from GCAC to Brass under TUFTA. The Settlement Agreement included mutual releases that were the same except in

---

[6] The Settlement Agreement was admitted into evidence by Vitol. (Sept. 16, 2022, Tr. 229:25-230:8 [ROA 8-8 184-85]).

one respect—Vitol expressly released its causes of action under TUFTA while Brass and GCAC did not make an equivalent release. (Settlement Agreement, pp. 1-2 [ROA 8-13, p. 115-16]). This was not just standard, blanket release language.

The reason this is important is because the avoidability of a transfer under TUFTA is a prerequisite for liability of the transferee. Tex. Bus. & Com. Code § 24.009(b) (indicating that judgment can be obtained against a transferee only "to the extent a transfer is voidable in an action by a creditor under Section 24.008(a)(1)"); Tex. Bus. & Com. Code § 24.008(a)(1) (indicating a creditor "may obtain . . . avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim"). The effect of resolving the avoidability of the transfers from GCAC to Brass was to resolve also the issue of Brass's liability under TUFTA, upon which the Bankruptcy Court's ruling is based.

Vitol argues that the inclusion of broad release language in the Settlement Agreement somehow necessarily defeats the specific resolution of the avoidance of transfers from GCAC to Brass under TUFTA. (Vitol Brief, p. 36). But there is no basis for this in *Archer*, Vitol cites no authority for the proposition, and it defies logic. Parties can specifically resolve certain issues in a settlement agreement but not others. And that is what happened here—the Settlement Agreement resolved the issue of whether Brass was liability to Vitol for actual fraudulent transfers under TUFTA but not with respect to other potential basis for that liability.

  b. *Unlike the consent judgment at issue in Brown v. Felsen, the Agreed Final Judgment here denied Vitol's requested relief to avoid transfers from GCAC to Brass.*

The question in *Brown v. Felsen* was whether a bankruptcy court may consider evidence beyond the judgment and record of a prior state suit when determining whether a debt reduced to judgment is dischargeable. 442 U.S. 127, 127-28 (1979). The consent judgment at issue in *Brown* did not indicate the cause of action on which the respondent's liability was based. *Id.* The Supreme Court held that bankruptcy courts may look behind the judgment and consider extrinsic evidence in a dischargeability action under those circumstances. *Id.* at 138-39.

The difference here is that Vitol expressly sought the avoidance of transfers from GCAC to Brass in its complaint and that relief was *denied* by the Agreed Final Judgment. In its counterclaim in state court, Vitol stated that "Vitol seeks to avoid all fraudulent transfers between GCAC, Brass, Trifinery, Joyce Brass, and other related persons/entities to the extent necessary to satisfy Vitol's claims." (State Court Counterclaim ¶ 36 [ROA 16-0 at 178]). The Agreed Final Judgment denied all other relief Vitol requested other than the money judgment in the amount of $10.0 million, including the avoidance of the transfers from GCAC to Brass. (Agreed Final Judgment, p. 2 [ROA 16-0 at 187]). Necessarily, this included denial of the avoidance of the transfers. And because avoidance of the transfers is a prerequisite

to Brass being liable to Vitol under TUFTA, the issue was necessarily decided by the Agreed Final Judgment and collateral estoppel applies.

> c. *The Bankruptcy Court's ruling in the Summary Judgment Order, incorporated into the Bankruptcy Court Judgement, did not address whether the Settlement Agreement and Agreed Final Judgment resolved liability under TUFTA being the basis for Brass's debt to Vitol.*

Vitol argues that "the Bankruptcy Court reviewed the Settlement Agreement and correctly found that it 'contains nothing specific about the parties' intent to specifically settle fraud or other tort claims.'" (Vitol Brief, p. 36). But this misses the point. Even if the Settlement Agreement and the Agreed Final Judgment did not resolve *all* potential issues relevant to whether the debt that Brass owed to Vitol is nondischargeable, it precluded the basis on which the Bankruptcy Court's judgment was based.

The Bankruptcy Court's ruling required that the debt Bass owed to Vitol reflected in the Settlement Agreement was the result of or on account of Brass's liability under TUFTA. (*See* discussion *infra* at III.a). Under the statutory scheme set out in TUFTA, the transfers from GCAC to Brass had to be avoidable in order for Brass to have liability to Vitol under TUFTA. Tex. Bus. & Com. Code § 24.009(b). Brass's liability to Vitol could not be on account of TUFTA because the Settlement Agreement provided that the transfers from GCAC to Brass were not

avoidable and the Agreed Final Judgment *denied* Vitol's requested relief seeking the avoidance of the transfers.

The issue for summary judgment was whether Vitol could assert *any* viable cause of action. The Bankruptcy Court held that it could. (Summary Judgment Order, p. 6-7 [ROA 8-2 at 128-29]). For example, Vitol's allegations that Brass obtained money from Vitol through fraudulent misrepresentations remained a viable theory. After the trial, however, the Bankruptcy Court ruled against Vitol on that theory. (Judgment and Order, p. 7-8 [ROA 8-20 at 329-30]).

Neither the Summary Judgment Order nor the Bankruptcy Court Judgment addressed whether the issue of Brass's liability to Vitol under TUFTA was resolved by the Settlement Agreement and the Agreed Judgment. And while Brass asserts that the issue was resolved as a matter of law, at a minimum, the proceeding should be remanded for the Bankruptcy Court to make the necessary determination. *See* 10 COLLIER ON BANKRUPTCY ¶ 7052.02 (incomplete findings with respect to a material issue normally requires vacation of the judgment and remand)

## III.   Reply to Vitol's arguments regarding Section 523(a)(2)(A).

The bulk of the responsive arguments in Vitol's brief concerns the basis for the Bankruptcy Court's ruling with respect to Section 523(a)(2)(A). However, Vitol loses sight of the underlying inquiry, how the relevant statutes and case law fit together, and what the Bankruptcy Court actually held. Further, even if this Court

accepts each of Vitol's arguments, this would *still* require remand because the Bankruptcy Court did not make a finding of Brass's actual intent.

> a. *Binding precedent, including Cohen v. de la Cruz, requires a causal connection between the act of obtaining money by fraud and the debt for such fraud to be nondischargeable under Section 523(a)(2)(A).*

Vitol argues that Brass's position is based on an errant interpretation of Section 523(a)(2)(A) to except only those debts obtained by false pretenses, a false representation, or actual fraud. (Vitol Brief, pp. 25, 31-32). Vitol cites the Supreme Court's decisions in *Cohen v. de la Cruz* and *Husky International Electronics v. Ritz* for the proposition that "to the extent obtained by" modifies "money" rather than "debt." (*Id.*). While that *is* how the Supreme Court has interpreted the statutory language, this argument misunderstands the inquiry under Section 523(a)(2)(A), what the Supreme Court held, and Brass's contentions.

Section 523(a) requires a causal connection between the debt and the specified conduct. According to *Cohen*:

> It is clear that "debt for" in that provision means "debt arising from" or "debt on account of," and it follows that "debt for" has the same meaning in § 523(a)(2)(A). When construed in the context of the statute as a whole, then, § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud.

*Cohen v. de la Cruz*, 523 U.S. 213, 220-21(1998); *see also In re Ozcelebi*, 640 B.R. 884, 897 (Bankr. S.D. Tex. 2022) ("In order to establish that a debt is excepted from

discharge based on actual fraud, the objecting party must prove: (1) the debtor committed actual fraud; (2) the debtor obtained money, property, services, or credit by the actual fraud; and (3) the debt arises from the actual fraud."). *Ritz* also reasoned that the relevant debt had to "result from" or be "traceable to" the relevant fraud and held that under certain circumstances the debt could "obtained by" a fraudulent transfer scheme. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 365 (2016).

Courts have held that Section 523(a)(2)(A) does not except that discharge where the liability forming the debt is *__not__* premised on the debtor's fraud even when the debtor's conduct was fraudulent. *See In re Sabban*, 384 B.R. 1, 7 (B.A.P. 9th Cir. 2008), *aff'd*, 600 F.3d 1219 (9th Cir. 2010) (holding that Section 523(a)(2)(A) did not apply where the debt did not require the debtor's fraud); *In re Exide Techs.*, 601 B.R. 271, 284 (Bankr. D. Del. 2019), *aff'd*, 613 B.R. 79 (D. Del. 2020) (Section 523(a)(2)(A) did not apply to a debt where the alleged fraudulent conduct was not a basis for the debt); *In re Carpenter*, 453 B.R. 1, 5 (Bankr. D.D.C. 2011) (applying *In re Sabban* to a similar statute). The debt must be the result of—i.e., caused by— the person obtaining the money by actual fraud. Where the fraud is irrelevant to the liability that forms the debt, the debt is not excepted from discharge under Section 523(a)(2)(A).

Both Vitol's argument and the Bankruptcy Court's ruling mistakenly collapse the inquiry into just whether Brass committed actual fraud. *Cohen* itself indicates

that Vitol is incorrect in asserting that the Bankruptcy Court only had to determine "whether the money he obtained—not the debt Bass owed to Vitol—resulted from Brass's fraud." (Vitol Brief, p. 32). But Vitol had to make that argument because the Bankruptcy Court ended its analysis at concluding that "there is sufficient evidence that Brass committed actual fraud under Section 523(a)(2)(A)" and did not evaluate whether the debt that Brass owed to Vitol was the result of or on account of that fraud. (*See* Judgement and Order, p. 13 [ROA 8-20 at 338]).

Any fraud by Brass was irrelevant to Brass's liability to Vitol under TUFTA, and therefore the Bankruptcy Court Judgment should be reversed. But at a minimum, this proceeding should be remanded to the Bankruptcy Court for determination of whether the debt that Brass owed to Vitol under the Settlement Agreement was "for" fraud that Brass committed. The question under Section 523(a)(2)(a) was whether the debt that Brass owed to Vitol was a debt that was the result of or on account of money obtained by Brass's actual fraud. The Bankruptcy Court never determined that it was.

Moreover, the position that Vitol claims Brass advances is the one that *Vitol* asserted in the Joint Pretrial Statement was the relevant legal question. The second legal question submitted by Vitol was "[w]hether the Agreed Judgment Debt or any portion thereof is nondischargeable under § 523(a)(2) because Brass incurred the obligation by actual fraud." (Joint Pretrial Statement, pp. 9-10 [ROA 8-3 at 9-10])).

While it does not appear that the Bankruptcy Court accepted Vitol's legal position—as indicated above, the Bankruptcy Court ended its inquiry after finding that Brass committed actual fraud—Vitol would be judicially estopped from taking a contrary position on appeal if this Court concludes that the Bankruptcy Court implicitly found that the debt Brass owed to Vitol was "for" Brass's actual fraud. And without that finding, the matter should be remanded.

> b. *The Bankruptcy Court did not rule that veil piercing was the basis for Brass's liability to Vitol, and any such ruling would have been reversible error.*

Vitol argues at length that the evidence would have been sufficient for the Bankruptcy Court to pierce the corporate veil under Section 21.223(b) of the Texas Business Organizations Code. (Vitol Brief, p. 13-24). But this argument also misses the point.

First, even *if* the Bankruptcy Court could have found that the debt that Brass owed to Vitol was resulting from or on account of Brass's liability for the debts of GCAC under a veil piercing claim under Section 21.223(b)—which Brass disputes—the Bankruptcy Court did not actually rule that this was the basis for Brass's liability. The Bankruptcy Court included its findings of facts and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure in its judgment

and order and that was simply not among them.[7] The Bankruptcy Court even noted that "Vitol uses TUFTA to establish a nondischargeable prepetition debt." (Judgement and Order, p. 9 n. 55 [ROA 8-20 at 334]). At most, Vitol's argument would support remanding the proceeding instead of reversal. *See* 10 COLLIER ON BANKRUPTCY ¶ 7052.02 (incomplete findings with respect to a material issue normally requires vacation of the judgment and remand).

Second, any finding that the debt Brass owed to Vitol was the result of or on account of Brass's liability for the debts of GCAC under Section 21.223(b) veil piercing would have been reversible error. Vitol did not mention piercing the corporate veil or Section 21.223(b) in the State Court Complaint, the Settlement Agreement, the Agreed Final Judgment, the Vitol Complaint, the Joint Pretrial Statement, or at the trial before the Bankruptcy Court. The absence in the State Court Complaint alone is dispositive because Brass's debt is from the Settlement Agreement and Agreed Final Judgment and *Archer* directs courts to evaluate the relevant debt at that time. And it is well established that any veil piercing claim that was not incorporated into the Settlement Agreement would belong to GCAC's bankruptcy estate and could only be asserted by the chapter 7 trustee. *E.g.*, *In re S.I.*

---

[7] One of the purposes of Rule 52(a) is to enable appellate review. 10 COLLIER ON BANKRUPTCY ¶ 7052.02 (citing 9 MOORE'S FEDERAL PRACTICE, § 52.02 (Matthew Bender 3d ed.); *Inverness Corp. v. Whitehall Laboratories*, 819 F.2d 48, 50 (2d Cir. 1987)).

*Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987). Similarly, the lack of and reference to a veil piercing claim in the Joint Pretrial Statement means that the issue was waived. *Jones*, 858 F.3d at 933–34.

>    c. *That any debt that Brass owes under TUFTA would be owed to the GCAC bankruptcy estate is relevant because Brown v. Felsen and Archer v. Warner indicate that courts must determine the true nature of the debt where there is a settlement agreement or agreed judgment.*

Vitol argues that it is irrelevant that any liability Brass had for an asserted claim under TUFTA belongs to the chapter 7 bankruptcy estate of GCAC. (Vitol Brief, p. 28). The only argument that Vitol makes is that Vitol's dischargeability action was not *per se* a TUFTA action seeking to avoid transfers and a return of funds to the GCAC estate.

The clear direction from the Supreme Court is that courts must look behind settlement agreements and agreed judgments to determine the true nature of the debt at issue when determining dischargeability. *See Archer*, 538 U.S. at 321; *Brown*, 442 U.S. at 138. Unless the relevant issues were resolved, courts must go back in time and evaluate the debt in the absence of the settlement agreement or agreed judgment. Vitol does not dispute that any liability under TUFTA would be owned by GCAC's bankruptcy estate absent the Settlement Agreement and Agreed Final Judgment. Without the Settlement Agreement and Agreed Judgment, only GCAC's trustee could assert rights arising from TUFTA liability.

Nor does Vitol dispute that the Bankruptcy Court's determination would lead to the absurd result of a transferee multiplying his or her nondischargeable debts by settling a fraudulent transfer action. Just as the mere fact of settlement should not hinder the rights of a creditor in asserting nondischargeability absent resolution of particular relevant issues, it should not hinder the rights of a debtor. But that is what the Bankruptcy Court's interpretation would do here.

> ### d. Vitol concedes that that the Bankruptcy Court did not make a finding on Brass's actual intent, which requires remand to the Bankruptcy Court.

Vitol disputes that the Bankruptcy Court failing to make a finding of actual intent to hinder, delay, or defraud Vitol matters because the purpose of the badges of fraud is to determine actual intent. (Vitol Brief, p. 28-29). The Fifth Circuit's decision in *Ritz* after remand from the Supreme Court contradicts Vitol's position.

As the Fifth Circuit indicated, the fact finder must *actually* draw the inference that the transfers "were made 'with actual intent to hinder, delay or defraud any creditor.'" *In re Ritz*, 832 F.3d 560, 568–69 (5th Cir. 2016). Although the bankruptcy court in *Ritz* found the existence of badges of fraud consistent with a finding of actual intent, it was required to find that intent. *Id.* at 569. This is consistent with the general rule that incomplete findings with respect to a material issue normally requires vacation of the judgment and remand. 10 COLLIER ON BANKRUPTCY ¶ 7052.02.

There are reasons the Bankruptcy Court could decline to make that additional finding.  As set out in Brass's principal brief, there was evidence at trial cutting the other way and inconsistencies with the Bankruptcy Court's factual findings. (See Brass Brief at pp. 53-54). Moreover, the transfers from GCAC to Brass occurred regularly over a period of time rather than all at once. And as more fully discussed *infra* at Section V.c, the inquiry requires a fact finder to weigh the evidence as a practical matter, even beyond the clear legal requirement set out by the Fifth Circuit.

> e. *The Bankruptcy Court misapplied Ritz in failing to evaluate whether the debt was the result of or on account of Brass obtaining money by fraud under the different circumstances present here.*

Vitol concedes that the debt at issue in *Ritz* arose from Section 21.223(b) rather than TUFTA, but argues that "the Fifth Circuit did not by negative implication (or otherwise suggest that TUFTA was irrelevant for 'actual fraud' analysis under § 523(a)(2)(A)." (Vitol Brief, p. 29). Again, this misses the point.

The Bankruptcy Court misapplied the law in failing to consider how a debt purportedly arising under TUFTA at issue here differs from a debt arising under Section 21.223(b) at issue in *Ritz*. As the Bankruptcy Court indicated, Vitol used TUFTA to establish a nondischargable prepetition debt. (Judgment and Order, p. 9, n. 55 [ROA 8-20 at 334]). But a critical difference is that whether Brass obtained money by fraud is *irrelevant* to his liability under TUFTA. *In re Pace*, 456 B.R. 253, 267 (Bankr. W.D. Tex. 2011) ("[The transferee's] intent, however, is irrelevant to

the question of whether the transfer is avoidable under section 24.005(a)(1).”). And as described above, where a debtor's fraudulent conduct is irrelevant to the liability asserted, that debt is not rendered nondischargeable by Section 523(a)(2)(A). *See In re Sabban*, 600 F.3d 1219, 1221, 1223-1224 (9th Cir. 2010) (affirming BAP decision referenced above because the "[f]raud and actual harm are irrelevant" under the statute at issue); *In re Exide Techs.*, 601 B.R. at 284. The inquiry here required more than just applying *Ritz*.

## IV.    Reply to Vitol's arguments regarding Section 523(a)(6).

Vitol argues that the Bankruptcy Court correctly ruled that the debt that Brass owed to Vitol was nondischargeable under Section 523(a)(6). (Vitol Brief, p. 38). However, Vitol does not address Brass's argument that there must be a causal connection required between the willful and malicious injury and the debt or that the Bankruptcy Court rejected the sole basis asserted by Vitol in the Joint Pretrial Statement. More fundamentally, Vitol does not address the issue that was actually before the Bankruptcy Court.

> a.  *Cohen v. de la Cruz indicates that there must be a causal connection between the willful injury and the debt for such fraud to be nondischargeable under Section 523(a)(6).*

Vitol asserts that there was evidence that Brass's actions were substantially certain to harm Vitol. (Vitol Brief, pp. 39-40). Setting aside the fact that this is contradicted by the Bankruptcy Court's finding that Brass believed that the parties

were operating under a joint venture (Judgment and Order, p. 3 [ROA 8-20 at 328]),

Vitol again tries to gloss over what the statute actually requires—that the debt be

"for" a willful or malicious injury by the debtor.

The Supreme Court made this clear in *Cohen*. Although the question

presented in *Cohen* was whether punitive damages fell under discharge exception in

Section 523(a)(2)(A), the decision had to interpret the meaning of "debt for"

applicable to all of Section 523(a). 523 U.S. at 220. The Court held that "debt for"

had the same meaning of "'debt arising from' or 'debt on account of'" throughout

the statute. *Id.* Just as with Section 523(a)(2)(A), it is not enough that there was a

willful or malicious injury by the debtor, but that injury by the debtor must have

been the cause of the debt at issue. But actual injury is irrelevant to whether Brass

had liability to Vitol under TUFTA and any liability under TUFTA would not be the

result of or on account of the actions of Brass but instead the actions of GCAC.

> b. *Vitol waived any basis for the debt being nondischargeable under
> Section 523(a)(6) other than because it arose from a willful or
> malicious injury to Vitol resulting from Brass's knowing breach of a
> clear contractual obligation to Vitol.*

Vitol's argument is at odds with what it asserted before the Bankruptcy Court.

In the Joint Pretrial Statement, Vitol asserted that its sole contention with respect to

Section 523(a)(6) was that Brass's debt to Vitol arose from Brass's knowing breach

of a clear contractual obligation to Vitol:[8]

> **Fourth**, Vitol contends that the Agreed Judgment is nondischargeable under § 523(a)(6) because it arose from a willful or malicious injury to Vitol resulting from Brass's knowing breach of a clear contractual obligation to Vitol. Although there was no written contract between the parties, Vitol and GCAC (through Brass) had unequivocally agreed that GCAC would remit to Vitol all cash proceeds received by GCAC from the sale of asphalt provided by Vitol immediately upon receipt. Vitol contends that Brass knowingly caused GCAC to breach this clear contractual obligation, and that the Agreed Judgment Debt arises directly from this breach and is therefore nondischargeable under § 523(a)(6).

(Joint Pretrial Statement, p. 5 [ROA 8-3 at 5]). That is what Brass responded to and

had notice was at issue at trial, and was submitted to the Bankruptcy Court for

decision. (*See* Joint Pretrial Statement, p. 7 [ROA 8-3 at 7]).

Despite Vitol's contentions to the contrary (Vitol Brief, pp. 44-45), particular

theories of recovery can be waived in a pretrial statement. *See Elvis Presley*

*Enterprises, Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) (holding that a

plaintiff waived its request for attorneys' fees on a different basis than asserted in a

---

[8] Although, the Joint Pretrial Statement indicates that Vitol also asserted the debt was nondischargeable under Section 523(a)(6) on an embezzlement theory (Joint Pretrial Statement, pp. 4-5 [ROA 8-3 at 4-5]), Vitol clarified at trial that this was a typographical error and this theory was related to Vitol's contentions under Section 523(a)(4). (Sept. 28, 2022, Tr. 186:17-21 [ROA 8-20 at 280]). In any event, the Bankruptcy Court rejected Vitol's theory of embezzlement. (Judgment and Order, pp. 14-15 [ROA 8-20 at 340]).

pretrial order); *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint . . . ."). Waiver is not limited in the way that Vitol contends.

The Bankruptcy Court did not find that Brass's debt to Vitol was the result of or on account of Brass's knowing breach of a clear contractual obligation to Vitol and any such finding would be inconsistent with the Bankruptcy Court's other findings. The Bankruptcy Court expressly found that "Brass believes that the parties operated under an informal joint venture."[9] (Judgment and Order, p. 3 [ROA 8-20 at 328]). Further, the Bankruptcy Court found that Vitol failed to prove that there was an agreement that GCAC would bear the hedging losses or storage, transportation, and related expenses. (Judgment and Order, p. 16 [ROA 8-20 at 341]). The breach was not knowing and the obligations were not clear.

## V.   Response to Vitol's arguments regarding its cross appeal.

Vitol argues with respect to its cross appeal that the Bankruptcy Court erred in limiting the non-dischargeable debt to $3.77 million. (Vitol Brief, pp. 54-59). But

---

[9] It is of no consequence that the Bankruptcy Court found that GCAC and Vitol were not operating under a joint venture. A knowing breach of contract sufficient to rise to the level of a "willful and malicious injury" requires the debtor to be aware of his obligations. *State of Tex. By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker*, 142 F.3d 813, 824 (5th Cir. 1998).

this misunderstands the Bankruptcy Court's ruling and ignores the direction from *Archer* to look behind the Settlement Agreement.

The Bankruptcy Court held that Vitol only proved that it was owed $3.77 million from GCAC prior to the Settlement Agreement. (Judgment and Order, p. 16 [ROA 8-20 at 341]). Brass's liability to Vitol prior to the Settlement Agreement could not exceed that amount under either TUFTA or Section 21.223(b). And Vitol has not argued, and certainly not established, error in the Bankruptcy Court's determination of GCAC's liability prior to the Settlement Agreement.

Brass's liability under TUFTA—the basis for the Bankruptcy Court's decision—is also limited to the value of transfers from GCAC to Brass. A creditor cannot recover under TUFTA more than the value of the transfer a person received received. Tex. Bus. & Com. Code § 24.009(b). Nor does the statute create liability for transfers to or for the benefit of other persons. A significant portion of the transfers forming the $8,010,474 number referenced by Vitol were ***not*** to or for the benefit of Brass.

Ultimately, even if this Court concludes that the nondischargeable debt that Brass owed to Vitol is not limited to the amount that GCAC owed to Vitol prior to the Settlement Agreement, the proceeding should be remanded to the Bankruptcy Court for further determination. Neither the Bankruptcy Court's findings and conclusions nor the evidence support that every single transfer from GCAC to Brass

(or other insiders) was fraudulent, much less require that conclusion. And the Fifth Circuit has indicated that fraudulent intent is a matter specially reserved for the fact finder. *In re Ritz*, 832 F.3d at 569.

> a. *Under any potential basis for the Bankruptcy Court's ruling, the amount of the nondischargeable debt would be, at most, the amount that GCAC owed to Vitol prior to the Settlement Agreement.*

Under the framework of *Archer* and *Brown*, courts are directed to look behind settlement agreements and agreed judgments, unless the parties specifically resolved particular issues or collateral estoppel applies. *See Archer*, 538 U.S. at 320. Where a judgment—agreed or otherwise—does not apportion damages among theories of recovery courts must make that determination in a Section 523(a) action. *In re Wong*, 802 F. App'x 280, 283 (9th Cir. 2020) (holding that plaintiffs were required prove which part of a judgment was traceable to fraud as opposed to other asserted claims); *In re Munoz*, 2018 WL 4697328, at *5 (D. Colo. July 3, 2018), report and recommendation adopted in relevant part, rejected in part, 592 B.R. 736 (D. Colo. 2018), aff'd in part, appeal dismissed in part, 784 F. App'x 653 (10th Cir. 2019); *see also In re Cottrell*, 2022 WL 4291390, at *8 (D. Conn. Sept. 16, 2022) (reversing summary judgment granted by bankruptcy court with respect to Section 502(a)(2)(A) because there was a genuine issue of fact whether the entire state court judgment was entirely for fraud).

Any relevant TUFTA liability that Brass owed to Vitol prior to the Settlement Agreement would be limited to the amount of debt that GCAC owed to Vitol. Section 24.009 of the Texas Business and Commerce Code governs the liability of a transferee under TUFTA. It provides:

> to the extent a transfer is voidable in an action by a creditor under Section 24.008(a)(1) of this code, the creditor may recover judgment for the value of the asset transferred, as adjusted under Subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less.

Tex. Bus. & Com. Code § 24.009(b). Such liability could have only existed prior to the Settlement Agreement because all claims under TUFTA were released by the Settlement Agreement. (Settlement Agreement, p. 1 [ROA 8-13 at 115]). And the statute is crystal clear that this liability was limited to *the lesser* of the amount the GCAC owed to Vitol or the value of the asset transferred to Brass. Therefore, the debt at issue cannot exceed what GCAC owed to Vitol prior to the Settlement Agreement.

Any liability that Brass owed to Vitol under a veil piercing theory prior to the Settlement Agreement would also be limited to the amount of debt that GCAC owed to Vitol. Vitol acknowledges this in comparing this case to *Ritz*, (Vitol Brief, pp. 55-56), but seeks to avoid the consequences of looking behind the Settlement

Agreement.[10] There is no authority justifying this disparate treatment. Any relevant debt arising under Section 21.223—by its nature—cannot exceed what GCAC owed to Vitol prior to the Settlement Agreement.

The Bankruptcy Court held that Vitol proved that GCAC owed Vitol $3,769,093.52 prior to the Settlement Agreement. (Judgment and Order, p. 16 [ROA 8-20 at 341]). This reflected the cost of product in connection with the transactions involving GCAC and Vitol. *Id.* While Vitol also asserted that GCAC was liable to it for hedging losses and storage, transportation, and related expenses, the Bankruptcy Court found that Vitol failed to establish liability for these amounts. *Id.*

The Bankruptcy Court's findings of fact were supported by the evidence presented at trial.[11] As the Bankruptcy Court found, there was "no firm evidence about who pays for hedges." *Id.* And there was "a lack of firm evidence about the

---

[10] Vitol's position would require giving issue the Settlement Agreement and Agreed Final Judgment preclusive effect where it benefits Vitol (the amount) but not where it benefits Brass (specific release of TUFTA claims and denial of Vitol's requested avoidance under TUFTA).

[11] While it appears that the Bankruptcy Court committed error in arriving at this amount, that error cuts in favor of Vitol. The Bankruptcy Court overlooked the payments GCAC made to Vitol on August 4, 2017, totaling $279,210.00 in its calculation. (*Compare* Judgment and Order, p.16, n. 93 (calculating the payments GCAC made to Brass but not including $279,210.00 of payments made on August 4, 2017) *with* Vitol Ex. 124 [ROA 8-18 at 270] (showing two wire transfers of $139,605.00 each from GCAC to Vitol made on August 4, 2017). Vitol's reconciliation indicated that this amount was approximately $3.5 million. (Judgment and Order, p. 15 [ROA 8-20 at 340]). The Bankruptcy Court's error explains the discrepancy.

calculation of transportation and related expenses." *Id.* Indeed, Vitol does not argue that that GCAC was liable to Vitol in an amount exceeding $3.77 million prior to the Settlement Agreement.

> b. *Under the basis for the Bankruptcy Court's ruling, the amount of the nondischargeable debt would also be limited to the value of the transfers from GCAC to Brass.*

Even if the Bankruptcy Court erred in limiting the amount of the non-dischargeable debt to the amount that GCAC owed to Vitol prior to the Settlement Agreement, the amount of non-dischargeable debt that Brass owed to Vitol under TUFTA—the basis for the Bankruptcy Court's decision—would be, at most, the value of the transfers from GCAC to Brass that were actual fraudulent transfers. This is less than $8,010,474 asserted by Vitol.

The liability of a transferee under TUFTA is limited to the value of the avoidable transfers received. Tex. Bus. & Com. Code § 24.009(b) ("[T]he creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less."). The evidence referenced by Vitol in its brief appears to indicate that Brass personally received approximately $4.65 million. That is the outside amount of debt Brass owed to Vitol that could *potentially* fall within the ambit of being nondischargeable under the

TUFTA theory adopted by the Bankruptcy Court.[12] As discussed further below, however, not every transfer Brass received would necessarily be a fraudulent transfer.

Vitol confuses the issue by couching it as "Vitol's actual damages under § 523(a)(2)(A) . . . ." (Vitol Brief, p. 55). But an action under Section 523(a) is to determine whether and to what extent debts that already exist are excepted from discharge—it does not provide an independent right to actual damages. A transferee's liability under TUFTA is set out in Tex. Bus. & Com. Code § 24.009(b).

> c. *To the extent that this Court concludes that the nondischargeable debt that Brass owed to Vitol is not limited to the $3.77 million amount that GCAC owed to Vitol prior to the Settlement Agreement, the proceeding should be remanded to the Bankruptcy Court for further determination.*

The Bankruptcy Court never found precisely which or the total amount of transfers from GCAC to Brass were made with the actual intent to hinder, delay, or defraud Vitol. Assuming it found actual intent for *any* transfers—in order to address just the error asserted by Vitol—the most that could arguably be inferred from the Judgment and Order is that the Bankruptcy Court found that the amount of these transfers totaled $3,769,093.52.

---

[12] There was no finding by the Bankruptcy Court that any transfer from GCAC to any other person was for the benefit of Brass.

Vitol's position, however, requires that each and every transfer from GCAC to not only Brass but also to or for the benefit of his mother (the owner of 50% of the equity in GCAC) was made with actual fraudulent intent. That is not justified by the Bankruptcy Court's findings of fact or required by the evidence in the record.

The evidence referenced by Vitol in its brief (Vitol Brief, p. 57) appears to indicate that Brass personally received 97 transfers totaling approximately $4.65 million.[13] These transfers ranged in amount from $1,500 (Vitol Appx. 099) to $675,000 (Vitol Appx. 25). The remaining amounts that Vitol references apparently represent transfers to or on behalf of the other equity owner of GCAC.

Looking at the transfers as a whole, it is difficult to imagine how *all* of them could have been made with the actual intent to hinder, delay, or defraud Vitol. The Bankruptcy Court ruled that Vitol only proved at trial that it was only owed $3.77 million more than the $18.43 million GCAC paid it. (Judgment and Order, p. 16 [ROA 004522]). So only the last $3.77 million of transfers to insiders could have had the effect of hindering or delaying Vitol's efforts at collection. And not all of the last $3.77 million of insider transfers went to Brass. (*e.g.*, Vitol Ex. 124 [ROA 16-0 at 488-492] (bank statement showing $85,000 in transfers to or for the benefit

---

[13] Vitol seems to have referenced some transfers more than once. However, Brass does not attempted to reconcile this issue here because that evaluation would need to be done by the trier of fact. Even if Vitol is correct, the matter should be remanded to the Bankruptcy Court to make the necessary determination.

of Joyce Brass compared to $37,500 in transfers to Arthur Brass). Additional fact finding would be necessary.

Consideration of particular transfers confirms this. The first transfer from GCAC to Brass in the evidence referenced by Vitol was a wire transfer of $50,000 made on December 4, 2017 (Vitol Appx. 21; Vitol Ex. 124 [ROA 16-0 at 366]). GCAC transferred $3,700,000 to Vitol ten days later. (Vitol Ex. 124 [ROA 16-0 at 369]). The following month, GCAC transferred $8,934,401.25 to Vitol. (Vitol Ex. 124 [ROA 16-0 at 383]). That would be a strange scheme to intentionally hinder, delay, or defraud a creditor. Others like the $18,747.55 check negotiated on April 17, 2018 (Vitol Appx. 112), appear more consistent with expense reimbursements than transfers made with the intent to hinder, or delay, or defraud a creditor, especially considering the $3,478,816 of deposits GCAC received that month (Vitol Ex. 124 [ROA 16-0 at 486]). Again, determining which transfers were fraudulent would require fact finding, not just review of the record.

Beyond the practical necessity, Fifth Circuit precedent is clear that inferring actual fraudulent intent under TUFTA must be done by the trier of fact. *In re Ritz*, 832 F.3d at 569 (indicating the question is "uniquely within the realm of the trier of fact"). A superior court cannot make its own findings of fact on appeal where the lower court did not do so. As such, even *if* Vitol is correct that the Bankruptcy Court erred in limiting the amount of any nondischargeable debt that Brass owed to Vitol

to the amount that GCAC owed to Vitol prior to the Settlement Agreement, this would require vacating the Judgment and Order and remanding the proceeding to the Bankruptcy Court to determine which transfers were made with the actual intent to hinder, delay, or defraud rather than for some other reason.

## CONCLUSION

Based on the foregoing and the arguments set forth in Brass's principal brief, the Bankruptcy Court's ruling should be reversed and judgment entered in favor of Bass. But even if this Court accepts the positions asserted by Vitol, the consequence would be that the Judgement and Order should be vacated and the matter remanded to the Bankruptcy Court for further determination. Upon such remand, the Bankruptcy Court should be able to consider the other assertions of error made by Brass, even if they do not rise to the level of reversible error for this Court, and other arguments that Brass may have.

Date: July 19, 2023

Respectfully submitted,

*/s/ R. J. Shannon*
Shannon & Lee LLP
R. J. Shannon
S.D. Tex. Bar No. 3196214
Tex. Bar No. 24108062
700 Milam Street, Suite 1300
Houston, TX 77002
Tel.: (713) 714-5770
Fax: (833) 71405770
Email: rshannon@shannonleellp.com

*Counsel for Appellant Arthur Jacob Brass*

## CERTIFICATE OF SERVICE

I certify that on July 19, 2023, the forgoing document was served through the Court's CM/ECF System on all parties registered to receive such notice and the following parties by separate email:

Keith Miles Aurzada
Mason Walton Malpass
Michael Halley Bernick
Omar Jesus Alaniz
Taylre Claudette Janak
REED SMITH LLP
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
469-680-4211
Email:       kaurzada@reedsmith.com
             mmalpass@reedsmith.com
             mbernick@reedsmith.com
             oalaniz@reedsmith.com
             tjanak@reedsmith.com

*/s/ R. J. Shannon*

## CERTIFICATE OF COMPLIANCE WITH BANKRUPTCY RULE 8015(a)(7)(B)

This brief complies with the type-volume limitation of Bankruptcy Rule 8015(a)(7)(B) because it contains 11,941 words, not including the cover page, table of contents, table of citations, certificates of counsel, signature block, or appendix.

*/s/ R. J. Shannon*